Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the

District of Columbia

Civil Division

|  |  |
|---|---|
| ZhuoHong Liu <br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* <br> -v- <br><br> American Chemical Society <br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case: 1:18-cv-02987   (F-DECK) <br> Assigned To : Kelly, Timothy J. <br> Assign. Date : 12/18/2018 <br> Description: Pro Se Gen. Civil  (JURY) <br><br> Jury Trial: *(check one)* ☒ Yes  ☐ No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | ZhuoHong Liu |
   | Street Address | 1718 Fletchers Dr. |
   | City and County | Point of Rocks |
   | State and Zip Code | MD 21777 |
   | Telephone Number | 2407802838 |
   | E-mail Address | Lawmattersmore@gmail.com |

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
- Name: American Chemical Society
- Job or Title *(if known)*: Attn: Thomas Connally Jr., CEO
- Street Address: 1155 16th Street N. W.
- City and County: Washington
- State and Zip Code: DC 20036
- Telephone Number: 2028724600
- E-mail Address *(if known)*:

Defendant No. 2
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 3
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 4
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:

Telephone Number

E-mail Address *(if known)*

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | American Chemical Society |
| Street Address | 1155 16th Street N. W. |
| City and County | Washington |
| State and Zip Code | DC 20036 |
| Telephone Number | 2028724600 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
Since January 23, 2015

C. I believe that defendant(s) *(check one)*:
- ☐ is/are still committing these acts against me.
- ☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☒ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

E. The facts of my case are as follows. Attach additional pages if needed.

This complaint arises from prohibited conducts by the American Chemical Society in its National Origin Discrimination (China) in the terms, conditions and termination of my employment, and in retaliation for raising the issue of discriminatory conduct. The Defendant's attempts to excuse that legally improper termination and its retaliation are pretextual, as will be shown below.

## Prior proceedings

On January 23, 2016, I filed with District of Columbia Human Right Office (DC OHR) my complaints of National Origin Discrimination and Retaliation against the American Chemical Society (Defendant), a large organization operating internationally with more than 1,500 employees. On May 2018, I requested that the Equal Employment Opportunity Commission (EEOC) review the DC OHR decision. On September 27, 2018, EEOC sent a Right to Suit letter to me; its regional coordinator informed me that EEOC does not review OHR decisions and did not do so in my case. Thus, the legally required administrative processes are exhausted.

## Reasons to Sue

I now sue Defendant American Chemical Society in this court to assert my legally protected rights, for three reasons:

1. The Defendant maliciously and misleadingly tried to justify its actions by providing the DC OHR with a holiday and leave policy issued in March 2017, more than two years after I was terminated by the Defendant. The document provided by Defendant concealed from the DC OHR the date the policy took effect. This irrelevant policy differed materially from the conditions and practices applicable to my employment. This misleading document was belatedly provided to the DC OHR upon its request after the interrogatory and witness interview process were completed. The misleading nature of Defendant's evidence and the failure of Defendant's attorney to abide by professional ethical rules compromised the integrity of the DC OHR's investigation. Here and at other points, the Defendant's misleading documents disguised the material facts.

2. With the same bad faith, malice and mendacity, Defendant contrived pretextual excuses to discriminate and retaliate against me. After an incident in which my supervisor of Indian national origin (Defendant Supervisor) improperly singled out my Chinese national origin, numerous incidents occurred which involved his unreasonable requests which he did not require of other staff, abnormal and unjustifiable scrutiny, demands specifically targeted at me-- including demands that violated globally accepted information security standards and practices in ways that were inconsistent with Defendant's own IT security policy and its business purpose of maintaining its global stature and obligations. Less than one month after I raised the question of discrimination, Defendant terminated me and justified the termination by false and misleading documentation. Shortly thereafter, my position was filled by a palpably less qualified person of the same national origin of the Defendant Supervisor who arranged my pretextual termination and retaliation. In fact, Defendant's conduct is a pattern and practice by Defendant's Supervisor of Indian national origin taking action which improperly disfavors persons of Chinese national origin and affiliation, which is absolutely contrary to Defendant's international position and responsibility.

3. Defendant discriminatorily handled my personal information in its HR's custody. Together with my contact information, it knowingly disclosed my date of birth without cause even though the disclosure was legally forbidden by the U.S. Federal Rules of Evidence and other pertinent regulations, and also disclosed the personal information of my Chinese Emergency Contact without cause. Defendant knew its behavior was wrongful: at the same time that it disclosed my personal information, it protected the personal information of its current employee of Indian national origin when submitting documents to the DC OHR.

## Factual Details

1. My job role and business requirements:

1) My job title, position requirement and my professional background:

On 12 Aug.2013, I was hired by the IT security team of Defendant as Sr. Data Analyst. The director Chris (American Caucasian, attorney, retired federal deputy CIO) told me this position was recently designed to meet Defendant's demand for full-time monitoring and detection of abusive usage of its key revenue generator – online Chemical publications. He talked about the piracy issues and the unique values I brought on board for this position, with my LL.M, MBA, and MS computer science degrees. He emphasized the real-time monitoring and prompt actions were paramount for this job role. He told me Defendant's Chemical Publication Division (Pub) funded this position instead of Washington IT that IT security team belonged to.

2) Business constraints, deliverables and IT security requirements for different job roles of the team:

The IT security manager Mike (American Caucasian) and director Chris enforced the IT security policy per industry standard, tiers of approval and authorization procedures were followed for access controls. The IT security team had a system security administrator (Jamaican). The different job roles had different system and content access rights. My job role had less privileged system access right than the system administrator and the manager, and my job role's access to Pub data must be approved by the managements of two different departments. The system security administrator dealt with systems, applications, and devices. My functions involved developing and running codes and analyzing millions of records of data, which had specific process queue constraints, and system interaction and technology compatibility constraints. My customers were Pub and its global sale teams. My ad hoc, daily, weekly, monthly, and multi-dimensional reports also served the needs of the senior management of Defendant.

3) My high performance rating on March 2014:

To accommodate the demanding time sensitiveness of my job deliverables, the management quickly approved my 3 days/week telecommute schedule. I soon developed collaboration processes with other departments, designed and developed different models of real-time monitoring tools by myself, which other department estimated would take two years waiting time for them to develop. My tools detected and enabled Defendant to block significant usage abuse promptly. To overcome the 2-day data gap caused by the weekend data conversation among different host systems of Defendant and its vendor, I sacrificed my personal times every Sunday to pulling and extracting data so that the real-time and trend analysis could continue daily without interruption. On March of 2014, I got high performance evaluations and 3% merit-based annual salary increase.

Nonetheless, after the Defendant Supervisor replaced my former manager, motivated by his animus towards my national origin, he ceaselessly searched for chances to fabricate grounds to terminate my employment. In his search to do so, he violated IT security policy multiple times, defied the business requirements and rules of his employer and of my job role requirements, and made false statements in the documents submitted to the DC OHR. His statements are belied by the well-documented facts, including the technology constraints of the vendor applications and the business rules that clearly exposed the unjustifiable nature of his conduct and demonstrate the deceptive nature of Defendant's submissions. The facts are as follow.

2. Defendant's work environment irregular symptoms:

On March 2014, IT security team merged with Defendant's Washington IT infrastructure department. Its director Taylor (American Caucasian) promoted his network lead of Indian national origin (Defendant Supervisor) who did not have any IT security certification to be the IT security manager on July 2014, months after my manager Mike resigned for external position. The system security administrator and I reported to this director for a few months. I also learnt of incidents of Washington IT that the Supervisor

of Indian national origin took adverse actions on senior level workers with Chinese origin and affiliation and promoted junior level worker of Indian national origin. In addition, the atmosphere of the Washington IT infrastructure department lacked appropriate professionalism and workplace compliance-driven mentality. For example, I heard its director stated to his department on at least one occasion that it was a pity its HR partner Koch (HR Koch, American Caucasian) was not his wife, and also heard at a cross-department meeting that he repeated twice with pleasure that the system security administrator would be his wife in his game.

3.  Defendant Supervisor singled out my Chinese national origin:

Beginning in Aug.2014, I detected high peaks of abnormal usage of Defendant online publication. After the Defendant Supervisor got on board in late July 2014, I helped him get familiar with the investigation and usage blocking processes. I provided him with the standardized processes documentations, codes for system connections and investigation, description and chart of investigation steps, and the process chart for further actions with Pub and institution subscribers. When we were reviewing the abnormal usage around the world, including in certain regions of China, Defendant Supervisor asked what I thought of the Chinese conduct since I was from China.

4.  Defendant Supervisor pretextually targeted at me and violated IT security policy:

From late September – early October 2014, other publication companies responded to the peaking trend of abnormal usage of their publications. To the benefit of the Defendant, my detection efforts allowed the Defendant to respond at least a week earlier. Nonetheless, in the midst of this peaking trend, on 8 Oct. 2014, the Defendant Supervisor abnormally, without any prior notice and arrangement, violated IT security policy requirement, requesting me to do system access troubleshooting in system security administrator's role when the system security administrator was working that day. When I reminded him of the rules, he stated he assigned the tasks to me, so I must complete them. Contradictorily, he did not request the system security administrator to complete the tasks of my job role then. I reported his conducts to two HR partners, I was told the responsible HR Koch would be informed about it and they would get involved in the communication between the Supervisor and me.

5.  Defendant Supervisor abused his position and fabricated false statement assisted by HR Koch:

In the same pattern as his violation of IT security rules by abusing his position, Defendant Supervisor turned the regular work activities into his pretextual maneuvers and created false statement of insubordination and performance issues about me. At late September – early October 2014, Defendant Supervisor requested me to have Tableau desktop (a business intelligent application) and Toad (a database development and management tool) installed in server environment immediately. The vendors emailed explanation about the budget requirements, technology constraints, and the technical infeasibility of the Defendant Supervisor's request, which I forwarded to the Defendant Supervisor and discussed the budget constraint and technical constraint with him. Thus, Defendant Supervisor was made aware by authoritative sources that his requests were not technically feasible. As will be discussed further below, despite this knowledge, he and the HR Koch completely distorted the facts to conceal his discrimination and retaliation motive, by hurriedly drafting a "PIP" on January 30, 2015, the very date they declared they terminated me when I was on floating holiday leave. Notably, the Defendant sent this flawed documents distorting the facts to the DC OHR without any signature. This maliciously fabricated document contained Defendant Supervisor's statement of my insubordination and performance issue - the Tableau and Toad were not installed in the server envirnoment. Defendant Supervisor's lies were too obvious and this PIP was an obvious bad-faith staged fake show. This fake show explains why Defendant did not have anything to prove I was informed of the "PIP" nor any "performance" discipline action and its grievance process - Defendant fabricated them!

6.  Defendant Supervisor's intensified pretextual maneuvers targeting at me instead of the contextually similarly situated teammate:

1)      Pretextual contradictorily biased telecommute change: While the telecommute was the best arrangement to meet the challenge of the time sensitivity of my job role's deliverables than to other roles of the team, the Defendant Supervisor ceaselessly manipulated my telecommute privileges. He and the system security administrator both lived within short distance to Defendant DC office. I live in Point of Rocks, Maryland, far away from DC, the commute was subject to the schedule of MARC train. At early Sept. 2014, the Defendant Supervisor changed our telecommute schedule stating the two staff members were required to offer office coverage onsite in turn each weekday. But he did not require office coverage by the system security administrator on my leave day; he told me to provide "office coverage" when the system security administrator was on leave. The system administrator's email of 29 Dec. 2014 confirmed the Defendant Supervisor's self-conflicting statements. Again, the Defendant Supervisor singled me out.

2)      Pretextual contradictorily biased deadline for documentations: The system security administrator planned to take 3-week vacation starting at Oct.27, 2014. While it was essential that the system security administrator should have provided training materials to the team on time so that her tasks could be performed during her vacation, the Defendant Supervisor did not set an effective timeline for her to provide training material, neither did he find fault on her when she composed and submitted the system training documentation behind the schedule, until Oct.16-20; instead, he made unreasonable attempts by imposing frequently changed tighter deadlines on me to provide "documentation of steps" despite my efforts to get his clarification on what he exactly wanted, despite my prior efforts of showing him the standardized processes, investigation steps, codes, and documentations in the team folder, and despite my explaining to him the code storage features of the applications I used.

7.      Defendant Supervisor falsely altered content in meeting minutes of 15 Oct. 2014 on Jan. 15, 2015:

1)      Director's early morning request for urgent reports on Oct.13. 2014:

As noted above, October 2014 was marked by the wide-spread peaks of abusive use of online publications. I constantly worked longer hours interacting with Pub and its sale team, including 9 Oct.2014 when I had severe headache, planned to take leave yet I stilled worked late into the evening to complete my investigation. The overwork made my health conditions get worse. On Monday morning, Oct.13th, the day I had a medical appointment, the director Taylor called to ask me to produce urgent investigation reports for the Pub deputy director to use at a senior management meeting. After the medical appointment, I worked past 3:00 am on Oct.14 and delivered the investigation reports as ordered. While this emergency was on-going, after midnight that evening, Defendant Supervisor emailed me asking me to go to DC office to get cross training from the teammate (note: the system security administrator did not even have training material for us until Oct.16 - 20, 2014, and did not notify him that the training was ready then). Because the Pub reports were the top priority, I pointed out to him the cross training could be conducted remotely, which would also allow me to get some needed sleep and work; otherwise, I had to trade in the overworked hours for getting rest I needed. He was aware of my health condition.

2)      Meeting minutes of Oct.15, 2015 and the telecommute "on hold" for office coverage:

The Defendant Supervisor had routine 1-on-1 meeting (Wed.) with me on 15 Oct.2014. The HR Koch attended, which I thought was the HR involvement in our communication that the two HR partners mentioned at early Oct. 2014. On 23 Oct. 2014, Defendant Supervisor emailed this meeting's minutes to HR Koch, documented that the office needed coverage when the teammate was on leave, so my telecommute schedule would be on hold. At the meeting, he told me he had to ask a contractor (with Indian national origin) of other department to do short report (the subjects I was investigating) for him to review on Oct.13. I told him the urgent report was required by Pub for senior management meeting, it was delivered and cc to him, it was unusual that he requested report of the same subject yet did not do anything with it nor show any business values of his requested report to the senior management. I felt Defendant Supervisor's pattern of conducts was highly abnormal, so I asked HR Koch if Defendant

offered EEO training.

3)      Defendant Supervisor altered telecommute "on hold" to "suspended" with HR Koch's collusion:

On Oct.23th, Defendant Supervisor emailed and asked HR Koch to add things he might have missed in his 15 Oct. 2014 meeting minutes. HR Koch did not add anything. On January 5, 2015, I brought up the discriminating matter for attention. In the morning of January 15, 2015, I scheduled meeting for Jan.20, 2015 to discuss the matter of discrimination with HR Koch. In the afternoon, at 4:00 pm, in his email to me, the Defendant Supervisor falsified and altered my telecommute status from "on hold" for the purpose of "office coverage" to "suspended" due to "performance issue". Before 15 Jan. 2015, the Defendant Supervisor never used word "performance issue", telecommute "suspended", neither did HR Koch add "suspended" and "performance issue" in the 15 Oct. 2014 meeting minutes. With HR Koch's collusion, the Defendant Supervisor used this alternation to arrange the termination of my employment.

8.      Defendant Supervisor's malice, pretextual maneuver, false statement of non-existed policy, and retaliation and discrimination in severe weather condition:

January of 2015 is historically documented in www.opm.gov with severe snow storms that impacted the entire Washington D.C. metropolitan area, including January 6 (Tues.), January 12 (Mon.), January 14 (Wed.), January 21 (Wed.), January 26 (Mon.) and January 27 (Tues.), 2015. The area I live had temperature that had been 3 degrees lower than DC.

1)      I raised the issue of discrimination on January 5, 2015:

On 29 Dec. 2014, I documented a clear evidence that the Defendant Supervisor's excuse of office coverage was bad-faith-based and pretextual. This was after I made many attempts to properly resume my telecommute schedule through team meeting and 1-on-1 meeting which were all cancelled by the Defendant Supervisor. The system security administrator's email with me confirmed the conflicting office coverage statement the Defendant Supervisor made. On Sunday evening, 4 Jan. 2015, the weather forecast showed icy condition for Jan.5 and snow storm for 6 Jan. 2015. In order to perform the monitoring and detection duties without disruption by MARC train caused by icy and snow weather condition, I emailed to the Defendant Supervisor the weather forecast, and the business necessities of resuming my original telecommute schedule, I pointed out to him that the employee safety was the top priority for all the organizations, and the Defendant workplace must follow compliance requirements. He responded that my telecommute was still on hold. On Monday, 5 Jan. 2015, I brought up the discriminating matter for attention, with email directly sent to the Defendant Supervisor. I asked the Defendant Supervisor to explain why my telecommute was still on hold. He did not provide answer.

2)      Defendant Supervisor's false statement of non-existed leave policy on January 15, 2015:

On 12 Jan. 2015, I emailed to the Defendant Supervisor requesting floating holiday leave for 16 Jan. 2015. In the morning of 15 Jan. 2015, HR Koch scheduled to meet with me on Jan. 20 to discuss the subject of discrimination. Around 4:00 pm, Jan.15, 2015, the Defendant Supervisor emailed to me, altered the word telecommute "on hold" to "suspended" due to "performance issues". Defendant Supervisor also made false statements on other three subjects, while in fact, all of his false statements RUN CONTRARY to the FACTS DOCUMENTED in Defendant's records that DIRECTLY EXHIBIT Defendant Supervisor's lies. He also issued warning for my January 12's leave request, stating the leave was not "requested prior to being scheduled" per policy requirement, despite the fact I made the request on January 12 for the leave on January 16. When I saw those false statement in the Jan.15, 2015's email of the Defendant Supervisor, my first impression was that a perjury in court room would subject him to jail sentence. The Defendant Supervisor did not provide copy of the policy to me. In fact, astoundingly, even the misleading March 2017 policy the Defendant provided to the DC OHR with bad faith still did not contain the same requirement as the Defendant Supervisor forged for issuing his illogical warning.

3)   Defendant Supervisor's malice and refusal to let me perform job duty on January 21, 2015:

With malice to expose me to the threat of severe weather condition and with the pretextual motive to create performance issue on me, the Defendant Supervisor told me to work onsite in DC office if I wanted to work and did not allow me to telework on 21 Jan. 2015 when there was snow storm forecast for that day; I told him beforehand I had two noon time medical CT tests in Frederick Maryland which needed at least two hours to prepare for the tests and I wanted to use the time I might have on performing my job duties with telecommute option. I emailed him asking him what business purpose he could serve by getting me spent time on driving back and forth between DC and Frederick which would leave me no time to work at all (not to mention the common sense of safety).

4)   Defendant's retaliation and discriminatory scrutiny on January 23, 2015:

In 20 Jan. 2015, HR Koch met with me in her office to discuss matter of discrimination. Rather than using her computer, she made note by hand which was not provided to me. I made oral then written request that she emailed the report to me so that I could verify the content of her note so as to move to the next step. She promised, however, she never did so.

In the afternoon of 23 Jan. 2015, I emailed to HR Koch trying to discover if she covered up what I reported to HR at early October 2014. HR Koch replied at 4:27 pm, suggesting I went to her office, without answering my question. I left the office with the impression that HR Koch had been part of the pretextual scheme. During the DC OHR investigation, Defendant accused I left the office at 4:27 PM (the time the HR Koch clicked her email sent button), which was an insubordination and performance issue. This illogical and unreasonable statement not only showed that the Defendant was motivated to seek all the chances to make excuse to retaliate, but also exemplified that Defendant's scrutiny of me was discriminatory by nature – indeed the Defendant Supervisor was the one who reported to work late and not complied with core work hour requirement. However, the Defendant did not accuse him of performance and insubordination issues.

5)   Defendant Supervisor took leave, denied my leave, and blocked my work account in three days with obvious discrimination and anxiety of retaliation:

On January 26-27, 2015, I worked from home during the snow storm following Defendant's incremental weather instruction. In the afternoon of Jan.27, 2015, the Defendant Supervisor emailed to us short notice that he wanted to be on leave to take care of a family matter on January 28. He suggested the Jan.28 1-on-1 meeting with me be changed to either Jan.29 or 30, but he did not schedule it. He did not force himself to give up his leave so that he could come to DC office to have 1-on-1 routine meeting with me on Wed., January 28, 2015 though. He also took 2-days leave while we were short of personnel when the system security administrator was on vacation; I was the only one who did not ask for any leave because I took my responsibility seriously. Months before, the Defendant Supervisor cancelled a meeting to accommodate the system security administrator's 1-day leave. Defendant Supervisor had himself and the system security administrator favorably treated in their enjoyment of their leave, yet retaliated and discriminatorily denied my 1-day leave on January 30, 2015, and blocked all my work accounts:

In the morning of Jan.28, 2015, after I struggled in pain (from a prior whiplash car accident injury which caused long term pain and other health issue) for a whole night due to shoveling heavy load of snow for the purpose of making way to go to DC office on Jan. 28, I emailed to Defendant Supervisor for 1-day sick leave. In the evening, I emailed him request for sick leave on Jan. 29, and floating holiday leave on 30 Jan. 2015 so as to have adequate time to get better before the next snow storm and to take care of the urgent need of my sole family in China (89 years old parent and hospital situation of family member). I saw no email of leave denial from the Defendant Supervisor. Around 3:30 pm, Jan. 30, 2015, I found all my work accounts were blocked by Defendant Supervisor (Note: only IT security manager was authorized to block account or send block order to system security administrator to execute).

The Defendant submitted to the DC OHR a copy of email that HR Koch sent out to my work email account on 29 Jan. 2015, in which she stated my leave request was denied, she and the Defendant Supervisor wanted me to go to DC office to meet with them on 30 Jan.2015. This email bore only automatic delivery status: not received by recipient. Defendant did not have established rule that could provide legitimate ground for HR Koch to trepass into assuming Supervisor's role of IT Security to deny my leave. The Defendant Supervisor did not make any reasonable effort to accommodate my need of leave as required. Defendant advocated family values, however, with the knowledge that my sole family was in China, it openly discriminated and contemptuously denied my need of leave for my family in China, and favorably accommodated the Defendant Supervisor's leave for his family need two days before my leave.

As the director Taylor stated in his email that we only needed to let him know when we wanted to use our leave time to take care of personal need, and as the leave practice that the department including the system security administrator followed: we provide notification before the leave. All in all, and with the fact that the Defendant did not make any reasonable efforts to accommodate my need to use my already earned leave hours for my urgent family matter, this illegitimately configured denial of leave was nothing, but pretext, retaliation, and discrimination. The eagerness to realize the termination of my employment was manifested by the Defendant Supervisor's collusion with HR Koch to block my account on Jan.30, 2015 - they did it ahead of schedule.

6)   The Defendant terminated me and replaced me with a worker of Indian national origin:

Around noon, Feb.2, 2015, the Defendant HR emailed termination letter to me, when I was going through radiology test in Frederick, MD, with accumulated 5 day sick leaves, 4 day family sick leave, and more than 25 days vacation leave hours still available to my credit up to that day. This was especially egregious because the Defendant was aware that I had not had time to take any vacation leave since I got onboard, but refused to make efforts to let me take vacation leave when I explained my situation and tried to give Defendant a cushion to exhibit good faith. My health condition was deteriorated due to the harms intentionally caused by Defendant. The Defendant replaced me with a worker of Indian national origin, who has BA computer degree obtained in a college in India, without any IT security credential. In contrast, my background and training are at a much higher level and my established professional versatility matched the position requirements and Defendant's evolving business needs far better than those of my replacement. Indeed, at this point of time, neither my replacement nor the Defendant Supervisor matched my credentials. Because I am the only one who possesses globally recognized cyber security certification, I am in a position to attest to and stand up firmly for the IT security principles that Defendant Supervisor made great efforts to violate or abridge against the interests of Defendant.

Every time when I tried to step forward on my complaint, the recollection of what the Defendant had done to me would make my body suffer severe vomiting symptoms for a few months. In the evening of January 22, 2016, when high snow submerged the entire Washington DC metropolitan area, I was submerged by the outburst recollection of the Defendant's wrongs, lies and harm, I decided to formally file complaint of National Origin Discrimination and Retaliation against Defendant. Now I sue Defendant.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

On January 23, 2016, timely charge filed with Distrcit of Columbia Office of Human Rights

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* 9/27/2018 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1) Base calculation: Actual loss of salary and benefits (Feb.-mid September 2015) is around $50000 USD.

2) Compensatory and punitive damages $600,000: calculated based on actual loss of salary and benefits, loss of economic opportunity at the market rate, and consequential pain and suffering resulting from the malicous nature of defendant's retaliation and discriminations.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     12/18/2018

Signature of Plaintiff
Printed Name of Plaintiff     ZhuoHong Liu

### B.   For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Zhuohong Liu<br>1718 Fletchers Drive<br>Point Of Rocks, MD 21777 | From: | Washington Field Office<br>131 M Street, N.E.<br>Suite 4NW02F<br>Washington, DC 20507 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative<br>**David Gonzalez,<br>State & Local Coordinator** | Telephone No.<br>(202) 419-0714 |
|---|---|---|
| 10C-2016-00639 | | |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Mindy G. Weinstein*     SEP 27 2018

Mindy E. Weinstein,<br>Acting Director     *(Date Mailed)*

Enclosures(s)

cc:

AMERICAN CHEMICAL SOCIETY<br>1155 16th St Nw<br>Washington, DC 20036

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*